IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| AMCO INSURANCE COMPANY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:17-CV-00712-DGK |
| N.O., et al., | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This declaratory judgment action concerns insurance coverage for a wrongful death lawsuit currently pending in the Circuit Court of Clay County, Missouri ("Underlying Lawsuit").[1] The lawsuit stems from a workplace accident that caused the death of Colton Frisbee ("Decedent"). In that lawsuit, N.O., Decedent's daughter, Corey Frisbee, Decedent's father, and Leeann Hutchinson, Decedent's mother (collectively "Underlying Plaintiffs"), sued Terry Fletcher ("Fletcher"), Genie Industries, Inc., and Myron Cowley ("Cowley") (collectively "Underlying Defendants") for the wrongful death of Colton Frisbee. At the time of the accident, Decedent and Fletcher worked for Myron's Precise Paint Systems, Inc. ("Myron's Precise Paint Systems"), owned by Cowley.

Now before the Court is AMCO's motion for summary judgment (Doc. 42) and N.O, Frisbee, and Hutchison's motion to dismiss, or, in the alternative, to stay proceedings (Doc. 49). For the following reasons, the motion to dismiss is DENIED and the motion for summary judgment is GRANTED.

---

[1] *N.O. v. Genie Indus., Inc.*, No. 15CY-CV07590-01 (Mo. Clay Cty. Ct. filed Feb. 10, 2016).

**Background**

The Underlying Lawsuit arose out of an accident on March 12, 2015, where Fletcher and Decedent, both employees of Myron's Precise Paint Systems, were operating an indoor scissor lift in the parking lot of a building they were painting as part of a work assignment. While Decedent was operating the scissor lift, it became unsteady. Decedent jumped from the lift's elevated platform and landed on a truck, and the lift fell on Decedent, killing him.

Plaintiff AMCO Insurance Company ("AMCO") issued several policies to Myron's Precise Paint Systems, a Commercial General Liability Policy ("CGL Policy"), a Business Auto Policy ("Auto Policy"), a Standard Workers Compensation and Employers Liability Policy ("ELI Policy"), and a Commercial Umbrella Liability Insurance Policy ("Excess Policy").

On September 24, 2015, Underlying Plaintiffs filed a wrongful death lawsuit in Clay County, Missouri against Underlying Defendants. On November 3, 2017, the Underlying Plaintiffs amended their petition asserting a single claim of negligence against Cowley, in his capacity as president, sole owner, and director of Myron's Precise Paint Systems. The petition alleges Cowley generally controlled and managed the business and property, including directing the Decedent in all aspects of his work, and was responsible for servicing and maintaining the subject scissor lift. ACMO denied it has a duty to defend Cowley under the insurance policies it issued to Myron's Precise Paint Systems, but agreed to defend Cowley in the Underlying Suit under a reservation of rights.

On August 25, 2017, AMCO filed this lawsuit seeking a declaration that none of the four insurance policies it issued required it to defend or indemnify Cowley in the Underlying Lawsuit. On December 14, 2017, the Court granted summary judgment in AMCO's favor that no coverage existed under the Auto Policy. Because the state court in the Underlying Lawsuit had granted the

Underlying Plaintiff's motion to amend their petition, the Court denied without prejudice AMCO's motion for summary judgment as to the other policies. Then on January 12, 2018, AMCO filed its second motion summary judgment motion arguing no coverage exists under the other insurance policies.

On February 26, 2018, Defendants filed a motion to dismiss this case arguing allowing both this lawsuit and the Underlying Lawsuit could expose the parties to inconsistent judgments. Since this motion was filed, the Underlying Plaintiffs and Cowley entered into a settlement agreement pursuant to Mo. Rev. Stat. § 537.065 in the Underlying Lawsuit. Under the settlement agreement, the Underlying Lawsuit will proceed to a bench trial on all issues of liability and damages. Further, the Underlying Plaintiffs agree to limit their execution rights to the coverage available under the AMCO policies. On March 28, 2018, the state court in the Underlying Lawsuit granted AMCO's motion to intervene and AMCO subsequently filed an answer to the second amended petition.

## Discussion

Before considering the merits of AMCO's motion for summary judgment, the Court considers whether it should exercise its discretion to stay or dismiss this action.

**I.      The motion to dismiss, or, in the alternative, stay proceedings, is denied.**

In arguing the Court should dismiss this case, Defendants argue there are parallel state proceedings encompassing the same issues as in this case.

Ordinarily, courts have a "virtually unflagging obligation" to entertain cases within their jurisdiction. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). A case seeking only a declaratory judgment provides federal courts with *some* discretion to dismiss. *E.g., Wilton v. Seven Falls Co.*, 515 U.S. 277 (1955); *Brillhart v. Excess Ins. Co.*, 316

U.S. 491 (1942). However, *Brillhart* and *Wilton* apply in full force only if there is a parallel state court proceeding. *Royal Indemnity Co. v. Apex Oil Co.*, 511 F.3d 788, 793 (8th Cir. 2008); *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 998–99 (8th Cir. 2005). A parallel suit is one involving "substantially the same parties litigating substantially the same issues." *Scottsdale Ins. Co.*, 426 F.3d at 997.

Here, there is no parallel state court proceeding. The parties in both proceedings are substantially the same: AMCO is a party to the Underlying Lawsuit as a result of its motion to intervene and the Defendants in this case are all parties in Underlying Lawsuit. However, the issues are not the same. The second amended petition of the Underlying Lawsuit contains a single count of negligence against Cowley, but does not present any issue regarding AMCO's duties to defend or indemnify or provide an opportunity to interpret the insurance policy. Considering that the issue of insurance coverage is not present in the Underlying Lawsuit, the Court finds the actions are not parallel.

When parallel proceedings are absent, a federal court considers several factors to determine if it should abstain from resolving a declaratory judgment action: (1) whether the federal suit will serve a useful purpose in clarifying and settling legal relations; (2) whether the federal suit will terminate and afford relief from uncertainty; (3) the strength of the state interest in having the issue decided in state court; (4) whether the issue can be more efficiently resolved in the state court; (5) whether there will be unnecessary entanglement between the suits; and (6) whether the declaratory judgment action is used for procedural fencing. *Scottsdale Ins. Co.*, 426 F.3d at 998.

Here, the federal action will serve at least one purpose that cannot be served in the state court action: ascertaining AMCO's obligation to continue defending Cowley, thereby resolving uncertainty surrounding that issue. This observation also demonstrates there is no risk of

entanglement with the state court proceedings because that issue has not been raised in state court, and this Court's resolution of the issue will not require examination of the underlying facts giving rise to the tort claim. "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Interstate Bakers Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 542 (8th Cir. 2012) (quotation omitted). Considering the *Scottsdale Ins. Co.* factors, the Court denies Defendants' motion to dismiss or stay the proceedings.

## II.    AMCO's motion for summary judgment is granted.

AMCO seeks summary judgment arguing that none of the policies it issued to Myron's Precise Paint Systems provides coverage for Cowley. Defendants agree the ELI Policy does not provide coverage. Accordingly, Plaintiff's motion is GRANTED as to the ELI policy.

The parties dispute whether the CGL Policy and the Excess Policy provide coverage. For the following reasons the Court finds the CGL Policy does not provide coverage and by extension, the Excess Policy also does not provide coverage.

### A. Summary Judgment Standard

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A court must view the facts in light most favorable to the nonmoving party and allow the nonmoving party to benefit from all reasonable inferences to be drawn from the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986).

**B. Missouri law governs.**

Missouri law governs this diversity action. Under Missouri law, "the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage." *D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo. 2010). Under Missouri rules of construction, the language in an insurance contract is given its plain meaning. *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. 1997).

**C. The plain language of the CGL Policy does not provide coverage.**

AMCO argues it owes no duty to defend or indemnify Cowley in the Underlying Lawsuit because even if Cowley could be considered an insured, an exclusion bars coverage. The Court agrees.

The CGL Policy lists the insured as Myron's Precise Paint Systems and provides in pertinent part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' to which this insurance applies," and it defines "bodily injury" to include death. CGL Policy (Doc. 43-2 at 37). However, the CGL Policy excludes coverage for acts resulting in:

> "Bodily injury" to:
> (1) An "employee" of the insured arising out of and in the course of:
>   (a) Employment by the insured; or
>   (b) Performing duties related to the conduct of the insured's business; or
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

*Id.* at 38 (referred to as "Employer's Liability Exclusion").

The policy further states that the executive officers and directors of the named insured are also insured, "but only with respect to their duties as . . . officers or directors." *Id.* at 45. The policy defines "executive officer" as "a person holding any of the officer positions created by [the organization's] charter, constitution, by laws or any other similar governing document." *Id.* at 49.

First, Defendants argue Cowley is an insured under the policy because he is an executive officer of Myron's Precise Paint Systems, and that there is a dispute of material fact whether Cowley was acting within is role as a corporate officer when he directed the Decedent to use the indoor scissor lift outdoors. Second, Defendants argue the policy language stating that executive officers are insureds "only with respect to their duties as . . . officers or directors" is ambiguous, citing to the dissent in *Piatt*, and that the Court should construe this ambiguity in their favor.

The CGL Policy's Employer's Liability Exclusion excludes coverage for bodily injury to an employee, no matter if the insured is the employer or an executive officer. Thus, while the policy states executive officers are insureds, the Employer's Liability Exclusion language excludes coverage for Cowley in his capacity as an executive officer, whether or not he was acting within the scope of his duties as an executive officer. *See Piatt v. Indiana Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 795 n.6 (Mo. 2015) (finding that whether or not the company's sole owner, director, and officer acted within the scope of his duty as an officer or director was not relevant in determining whether the employee exclusions provision—substantially similar to the Employer's Liability Exclusion in this case—applied). Like the Court in *Piatt*, even if the Court were to find that the executive officers policy language is ambiguous and finds that Cowley is an insured, the language of the Employer's Liability Exclusion still bars coverage.

### D. The Excess Policy does not provide coverage.

The Excess Policy names Myron's Precise Paint Systems as the insured. There are two types of coverage within this policy: Coverage A, "Excess Follow Form Liability Insurance" and Coverage B, "Umbrella Liability Insurance." For purposes of both coverages, underlying insurance includes only the CGL Policy, the Auto Policy and the ELI Policy. Coverage A only covers incidents that are covered by the underlying insurance policies. Coverage B excludes coverage for bodily injury to an employee arising out of employment, an identical exclusion to the CGL Policy's Employer's Liability Exclusion.

Because the Court finds no coverage exists under the CGL Policy, and the parties agree neither the Auto nor the ELI Policies provide coverage, Coverage A of the Excess Policy does not provide coverage. Additionally, for the reasons stated in Section II.C, the Court finds the policy's employer's liability exclusion bars coverage.

## Conclusion

The motion to dismiss or, in the alternative to say proceedings (Doc. 49) is denied. AMCO's motion for summary judgment (Doc. 42) is granted.

**IT IS SO ORDERED.**

Date: __July 18, 2018__             __/s/ Greg Kays__
                                                                    GREG KAYS, CHIEF JUDGE
                                                                     UNITED STATES DISTRICT COURT